UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| ROBERT MYERS | CIVIL ACTION |
| VERSUS | NO. 14-2787 |
| KIM EVANS RUGON, ET AL. | SECTION A(4) |

## ORDER AND REASONS

Before the Court is a **Motion for Summary Judgment (Rec. Doc. 27)** and a **Motion to Strike Affidavits (Rec. Doc. 39)** filed by Defendants Goodwill Industries of Southeastern Louisiana, Inc., and Kim Evans Rugon. Plaintiff Robert Myers opposes the motions. The motions, set for submission on July 13, 2016, and August 10, 2016, respectively, are before the Court on the briefs without oral argument. A bench trial is set to begin on October 31, 2016. For the reasons that follow, the **Motion for Summary Judgment** is **GRANTED**, and the **Motion to Strike Affidavits** is **DENIED AS MOOT**.

### I. Background

Defendant Goodwill manages a program at a local homeless shelter, Lindy's Place, on Baronne Street. (Rec. Doc. 1 at 3). Plaintiff Robert Myers, a longtime employee of Goodwill, worked at Lindy's Place as a chef and cooking instructor, charged with preparing meals and teaching culinary skills to convicts and others placed in the vocational rehabilitation program. (*Id.*) Plaintiff's employment with Goodwill was governed by a conflict of interest policy set out in the employee handbook. (Rec. Doc. 27-4). Plaintiff acknowledged that he had received and reviewed the handbook. (*Id.*) The policy reads as follows:

> You're not permitted to have outside activities that compete with products or services offered by Goodwill . . . . Employee should not: participate in an outside employment or activity that could have an adverse effect on your ability to perform

1

your duties for Goodwill/Goodworks. Use company time or assets for your own business or other job.

(*Id.*)

In 2007, Plaintiff formed his own non-profit business, Project Hope and Desire, Inc. (Rec. Doc. 27-2 at 36-37). The business aimed to serve the homeless, although, according to Plaintiff, the business never acquired enough funding to start moving toward this goal. (*See id.*)

In May 2014, it was brought to the attention of Goodwill management that Plaintiff had approached a Goodwill employee about working for Project Hope and Desire, Inc. (Rec. Doc. 27-5 at 6). Goodwill management then discovered that Plaintiff used the address for Lindy's Place as his business's registered domiciliary address with the Louisiana Secretary of State. (*Id.* at 7). Upon that discovery, Goodwill's Human Resources Director and President decided to terminate Plaintiff, for violating the company's conflict of interest policy. (*Id.* at 12). Plaintiff was terminated on June 2, 2014. (Rec. Doc. 27-6). Plaintiff appealed his termination using Goodwill's appeal process, and his appeal failed. (*See id.*). The reasons for rejecting the appeal were set forth in a letter, dated June 16, 2014, to Plaintiff:

> Your termination was based on your violating the company's conflict of interest policy. During our discussion, you indicated that you registered your non-profit, Project Hope and Desire, Inc., at 2407 Baronne Street which [is the] address of Lindy's Place, a contract site that Goodwill manages for Unity Inc. and your employment location. Lindy's Place is a homeless shelter that targets women and children. Further discussion with you revealed that your non-profit also targets the homeless population. Although you indicate that this non-profit does not have any clients or grants at this time. You also stated that you only used the Baronne [S]treet address for convenience of getting mail only. When asked why you did not use your home address, you could not give me an explanation.

(*Id.*)

After Plaintiff's termination, documents were found in Plaintiff's office further evincing Plaintiff's violation of Goodwill's conflict of interest policy. These included Regions Bank checks written on behalf of Plaintiff's business with the Baronne Street address printed on the checks and

a non-disclosure agreement between the business and a third party citing to the Baronne Street address. (Rec. Doc. 27-7 at 6-9). These also included typed minutes from the business's board meetings, which contradict Plaintiff's deposition testimony saying the board did not keep minutes because they did not have meetings. (Rec. Doc. 27-2 at 39). The minutes showed that the meetings were held at Lindy's Place. (Rec. Doc. 27-8).

Plaintiff filed suit in this Court on December 9, 2014, alleging wrongful termination, employment discrimination, hostile work environment, and intentional infliction of emotional distress. (Rec. Doc. 1). He alleges claims against Goodwill and against his supervisor, Dr. Kim Rugon. (*Id.*) Plaintiff's complaint notes that he had been receiving all of his mail at the Baronne Street address for Lindy's Place for five years before his termination. (*Id.*) Plaintiff asserts that the actual reason for his termination was Rugon's "animus against white persons" and animus against Plaintiff in particular, due to his race and age. (*See id.*)

In support of these allegations, Plaintiff asserts that Rugon "undermin[ed] his authority with his students, coldly refus[ed] his input or contributions to the workplace, and generally treat[ed] [Plaintiff] poorly and with hostility." (*Id.* at 7). Defendants note that Plaintiff complained only once to management about Rugon. (Rec. Doc. 27-2 at 23). Plaintiff told the Human Resources Manager, Frances Williamson, that Rugon made two offensive comments: (1) "I guess, Chef, I can't teach an old dog new tricks," and (2) "Well, you know how they are. They like it when we get mad so they can say that that is what is expected of us." (Rec. Doc. 27-2 at 9, 23). Plaintiff asked Williamson to speak to Rugon. (*Id.* at 24). Thereafter, Plaintiff did not hear Rugon make comments of this nature again. (*Id.*)

Plaintiff alleges that, in addition to these comments, Rugon repeatedly stated that she intended to hire only "strong black men." (Rec. Doc. 1 at 5). In her deposition, Rugon explained

3

that she made this comment while trying to recruit mentors for her "Youth Empowerment Program." (Rec. Doc. 27-3 at 16). She told the staff that she was trying to match particular mentors with the youth who were joining the program from the juvenile justice system. (*Id.*)

Plaintiff also asserts claims of defamation and slander. (Rec. Doc. 1 at 7). In support of these claims, Plaintiff asserts that since his termination, Goodwill and Rugon have provided damaging information and poor references to Plaintiff's future prospective employers. (*Id.* at 8).

**II.     Analysis**

Summary judgment is appropriate only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," when viewed in the light most favorable to the non-movant, "show that there is no genuine issue as to any material fact." *TIG Ins. Co. v. Sedgwick James*, 276 F.3d 754, 759 (5th Cir. 2002) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986)). A dispute about a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Id.* (citing *Anderson*, 477 U.S. at 248). The court must draw all justifiable inferences in favor of the non-moving party. *Id.* (citing *Anderson*, 477 U.S. at 255). Once the moving party has initially shown "that there is an absence of evidence to support the non-moving party's cause," *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986), the non-movant must come forward with "specific facts" showing a genuine factual issue for trial. *Id.* (citing Fed.R.Civ.P. 56(e); *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986)). Conclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial. *Id.* (citing *SEC v. Recile*, 10 F.3d 1093, 1097 (5th Cir.1993)). Rule 56, which governs summary judgment, must be construed "with due regard not only for the rights of persons asserting claims and defenses that are

adequately based in fact to have those claims and defenses tried to a jury, but also for the rights of persons opposing such claims and defenses to demonstrate in the manner provided by the Rule, prior to trial, that the claims and defenses have no factual basis." *Celotex*, at 327.

As Defendants note, "unsupported allegations or affidavits setting forth 'ultimate or conclusory facts and conclusions of law' are insufficient to either support or defeat a motion for summary judgment." *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985) (citing C. Wright, A. Miller & M. Kane, Federal Practice and Procedure: Civil 2d § 2738 (1983)). Conclusory opinions should be stricken from the record. *See Thomas v. Atmos Energy Corp.*, 223 Fed. App'x 369, 374-375 (5th Cir. 2007).

> i.   *Title VII Wrongful Termination Claim*

For Title VII claims, courts apply the burden-shifting framework established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 345 (5th Cir. 2007) (citing *Rutherford v. Harris County*, 197 F. 3d 173, 179-80 (5th Cir. 1999)). Under this framework, the plaintiff has the initial burden of presenting a prima facie case of discrimination. *Id.* To do this, a plaintiff must establish that he "(1) is a member of a protected class, (2) was subjected to an adverse employment action, (3) was qualified for [his] position, and (4) was replaced by someone outside of the protected class." *Id.* (citing *Rutherford*, 197 F.3d at 179, 184).

If the plaintiff succeeds in establishing a prima facie case, the burden shifts to the employer, who "must rebut a presumption of discrimination by articulating a legitimate, nondiscriminatory reason for the adverse employment action." *Id.* (citing *Auguster v. Vermilion Parish Sch. Bd.*, 249 F.3d 400, 402 (5th Cir. 2001)). If the employer rebuts the presumption, the burden shifts back to the plaintiff "to present substantial evidence that the employer's reason was pretext for

discrimination." *Id.* (citing *Auguster*, 249 F. 3d at 402). "If the plaintiff can show that the proffered explanation is merely pretextual, that showing, when coupled with the prima facie case, will usually be sufficient to survive summary judgment." *Id.* (citing *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 146-48, (2000)).

Using an employer's time and resources to develop a startup company is a legitimate, nondiscriminatory reason for termination. *See Pickens v. Shell Tech. Ventures Inc.*, 118 F. App'x 842, 847 (5th Cir. 2004). Also a legitimate, nondiscriminatory reason is the violation of a company's policies. *See Cervantez v. KMGP Services Co. Inc.*, 349 F. App'x 4, 9 (5th Cir. 2009) (finding violation of company policy mandating that Internet be used for business purposes only a legitimate, nondiscriminatory reason for termination).

Goodwill has successfully met its burden of showing that it terminated Plaintiff for a legitimate, nondiscriminatory reason. In the letter denying Plaintiff's appeal, dated June 16, 2014, shortly after Plaintiff's termination, Goodwill detailed to Plaintiff the reason for his termination. Goodwill told Plaintiff he violated the company's conflict of interest policy by registering the Baronne Street address as his non-profit's domiciliary address and by receiving mail at the Baronne Street address. After Plaintiff's termination, Goodwill discovered, based on typed meeting minutes found in Plaintiff's documents, that Plaintiff's non-profit had held meetings at the Baronne Street address. Plaintiff also had checks made for his non-profit using the Baronne Street address on the checks. The evidence overwhelmingly demonstrates that Goodwill had a legitimate, nondiscriminatory reason for terminating Plaintiff.

Plaintiff has failed to present substantial evidence that Goodwill's reason was pretextual. Plaintiff asserts that his supervisors knew for years that he had established Project Hope. Plaintiff further asserts that he had received personal mail at the Baronne Street address for five years

without incident. This information, standing alone, does nothing to establish pretext. "A defendant's failure to follow its own policy is not probative of discriminatory animus in absence of proof that the plaintiff was treated differently than other non-minority employees because Title VII does not protect employees from the arbitrary employment practices of their employer, only their discriminatory impact." *Turner*, 476 F.3d at 346 (quoting *Upshaw v. Dallas Heart Group*, 961 F. Supp. 997, 1002 (N.D. Tex. 1997). Unless Plaintiff can show that non-white employees violated the company's conflict of interest policy like Plaintiff did and were not terminated, evidence that Goodwill belatedly or arbitrarily enforced its policies is not persuasive.

Plaintiff's opposition argues that Rugon displayed animus toward him. The evidence fails to establish, however, that Rugon played any role in making the decision to terminate Plaintiff. Even if Rugon had played a role, Plaintiff has not presented substantial evidence showing that Goodwill's reason for termination was a pretext for discrimination. Plaintiff has also failed to present any evidence that the ultimate decision makers, Frances Williamson and William Jessee, had an illegal motive and used the conflict of interest policy as a pretext. In fact, Plaintiff said in his deposition that he found Williamson "to be above all honest and a caring employee for Goodwill." (Rec. Doc. 27-2 at 24). He said that while she had to make difficult decisions, "she has done so fairly." (*Id.*)

Plaintiff's opposition disputes that he used Goodwill's time or resources in developing Project Hope.[1] Even if Plaintiff did not use the company's time or resources in developing his company, Goodwill nonetheless had a legitimate, nondiscriminatory reason for firing him. Goodwill reasonably concluded that Plaintiff had violated the policy. Violation of the policy did not require using the company's resources; it only required participating in an activity that

---

[1] The Court notes that Plaintiff's opposition and Plaintiff's affidavit appear to be nearly word-for-word identical. The Court therefore will consider only Plaintiff's opposition in connection with this motion, not his affidavit.

7

competed with Goodwill. Plaintiff did just that, given that he established a company that targeted the homeless population, as Goodwill does. Although the goal of Project Hope is admirable, Plaintiff could not expect to continue working for Goodwill and developing his competing company, in light of the company's policy, regardless of whether Plaintiff used Goodwill's resources.

Plaintiff also disputes that Project Hope competes with Goodwill and that he violated Goodwill's conflict of interest policy at all. Plaintiff lacks factual support for these assertions. As such, the Court disregards them.

Plaintiff's opposition occasionally offers a general citation to "Exhibit 2" or "Exhibit 3," the affidavits of two others who attest to the discrimination Plaintiff suffered. One affidavit is from Allen Bourgeois, a Caucasian male and former employee of Goodwill. He attests that Rugon treated him "with disrespect and hostility in a manner that [he] believed was based upon [his] race." (Rec. Doc. 31-2 at 2). The other affidavit is from James Price, an African-American male and former employee of Goodwill. Price attests that he witnessed Rugon yell at Bourgeois and treat him "with disrespect and hostility in a manner that [he] believed was based upon [Bourgeois's] race." These affidavits largely consist of conclusory statements and appear to be attempts to use the right legal terminology. These are the kind of unsubstantiated allegations and legalistic argumentation that should be excluded from the record. Further, Plaintiff concedes the following in his opposition to Defendants' motion to strike: "While the respective Affiants [sic] here may include certain statements are [sic] vernacular NOT of personal knowledge, or perhaps including certain items of hearsay in multi-page and multi-statement Affidavits, it is without dispute that the greater bulk of these Affidavits presented by the Plaintiff here are made from personal knowledge from events witnessed firsthand . . . ." (Rec. Doc. 43 at 3). Thus, in addition

to unsubstantiated allegations and legalistic argumentation, the affidavits admittedly contain hearsay. *See Goodwin v. Johnson*, 132 F.3d 162 (5th Cir. 1998).

Another affidavit is from Quenten Hall, who worked at the Roosevelt Hotel with a man named Terry Fleming, who left the Roosevelt Hotel to replace Robert Myers at Goodwill. Plaintiff's opposition references this affidavit in an incomplete sentence, leaving the Court to determine the affidavit's relevance. Upon reviewing the affidavit, the Court finds that it also contains inappropriate hearsay and unsupported allegations.

    *ii.*    *ADEA Wrongful Termination Claim*

The Fifth Circuit applies the *McDonnell Douglas* burden-shifting framework to ADEA claims. *Bryan v. Wood Enterprises*, No. 08-3928, 2010 WL 3922165, at *3 (E.D. La. Sept. 27, 2010) (Berrigan, J.) (citing *Jackson v. Cal–Western Packaging Corp.*, 602 F. 3d 374, 378 (5th Cir. 2010) ("[A] plaintiff can recover under the ADEA only if her employer has no legitimate reason for the challenged employment decision or if the plaintiff can show that the employer's given reason is a mere pretext. Even though *Gross* failed to clarify whether the *McDonnell Douglas* burden shifting framework applies to ADEA claims, the Fifth Circuit has continued to apply it to ADEA claims.") Thus, the same reasoning given for Plaintiff's Title VII claim applies to Plaintiff's ADEA claim. Plaintiff has not presented substantial evidence to show that the conflict of interest policy was used as a pretext for age discrimination.

    *iii.*    *Hostile Work Environment Claim*

To establish a claim of hostile work environment under Title VII, a plaintiff must prove the following: (1) that he belongs to a protected group; (2) that he was subjected to unwelcome harassment; (3) that the harassment complained of was based on race; (4) that the harassment complained of affected a term, condition, or privilege of employment; (5) that the employer knew

or should have known of the harassment in question and failed to take prompt remedial action. *Hernandez v. Yellow Transp., Inc.*, 670 F. 3d 644, 651 (5th Cir. 2012) (quoting *Ramsey v. Henderson*, 286 F.3d 264, 268 (5th Cir. 2002)). The Supreme Court has "long recognized" that the interpretations of Title VII's language apply in the context of age discrimination. *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 183 (2009). Thus, the aforementioned elements will guide the Court's analysis of Plaintiff's Title VII and ADEA hostile work environment claims.

The Supreme Court has stated and the Fifth Circuit has echoed that "simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment.'" *Hockman v. Westward Commc'ns, LLC*, 407 F.3d 317, 328 (5th Cir. 2004) (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998)). In *Turner v. Baylor Richardson Medical Center*, the plaintiff, an African-American female, alleged that her supervisor, a Caucasian female, made "a series of racially insensitive or derogatory remarks during the course of her employment." 476 F. 3d at 342. The plaintiff alleged that when her supervisor talked about volunteer work she had done with inner-city children, she referred to the children as "ghetto children." *Id.* When the plaintiff said she did not want to hear the stories, her supervisor stopped telling them. *Id.* Later, when the plaintiff told her supervisor that she may take college courses, her supervisor said that when she worked at a university, the African-American students attended evening classes because they could not qualify for regular admission. *Id.* The plaintiff also alleged that her supervisor looked at her with surprise or disdain when the plaintiff mentioned her high-end car or shopping habits. *Id.* The court noted that at no time did she complain to management about her supervisor. *Id.*

The court noted that the "ghetto children" comments were "perhaps racially inappropriate" but that they stopped upon the plaintiff's request. *Id.* at 348. The court wrote that the other

comments were "isolated incidents" and "pale in comparison, both in severity and frequency," to evidence in other cases. *Id.* The court cited cases where plaintiffs had been called "nigger" and other severely offensive names. *Id.* (citing *Walker v. Thompson*, 214 F.3d 615, 619-22 (5th Cir. 2000); *Daniels v. Essex Grp., Inc.*, 937 F.2d 1264, 1266 (7th Cir.1991); *Spriggs v. Diamond Auto Glass*, 242 F.3d 179, 182 (4th Cir. 2001)).

In the instant case, Plaintiff testified in his deposition that he only saw Rugon once a week, if that. (*See* Rec. Doc. 27-2 at 13). Rugon only rarely visited Plaintiff's work site. *Id.* When Plaintiff had to visit Rugon's work site, Plaintiff would only "stick [his] head in . . . to let her know [he] was there." *Id.* This indicates to the Court that any comments made by Rugon were isolated incidents and would have to be "extremely serious" to amount to discriminatory effects on the conditions of Plaintiff's employment. The two comments Rugon made directly to Plaintiff include (1) "I guess, Chef, I can't teach an old dog new tricks," and (2) "Well, you know how they are. They like it when we get mad so they can say that that is what is expected of us." (Rec. Doc. 27-2 at 9, 23). If the "ghetto children" comments in Turner were "perhaps" insensitive, these comments are even less so. They are far from being "extremely serious." Plaintiff's opposition does assert that when Rugon made the "us" and "them" comment, her body language and attitude "terrorized" him. However, without referring to evidence that would provide more detail, such as whether Rugon was physically threatening, the Court analogizes this assertion to the *Turner* supervisor's looks of surprise or disdain. The Court finds this assertion insufficient to make the comment more serious. Lastly, the Court also finds it significant that when Plaintiff complained to management about these two comments, Rugon never made comments of this nature again.

Plaintiff asserts that Rugon repeatedly stated in meetings that she wanted to hire "strong black men." The Court finds that these meetings were isolated incidents, if that. In fact, Rugon's

11

testimony offers great detail about the one meeting during which she made the comment and the context around which she made it. (Rec. Doc. 27-3 at 16). Plaintiff's opposition, to the contrary, vaguely asserts that she made the comments at multiple meetings. Plaintiff gave a general reference to the attached exhibits. The Court found, in Bourgeois's affidavit, that he did attest that Rugon repeatedly made comments about her desire to hire "strong black men."

The Court finds that even if Rugon made the comment at multiple meetings, the comment is nothing more than insensitive. As previously noted, Rugon explained that she made the comment while trying to recruit mentors for her "Youth Empowerment Program." (Rec. Doc. 27-3 at 16). She told the staff that she was trying to match particular mentors with the youth who were joining the program from the juvenile justice system. (*Id.*) Especially in light of the context surrounding these comments, the Court finds that these comments were far from "extremely serious." The Court also finds it significant that Plaintiff never complained to management about the "strong black men" comments.

Accordingly, the Court concludes that Plaintiff has failed to allege harassment that affected the conditions of his employment. For the foregoing reasons, the Court grants summary judgment on Plaintiff's claims of hostile work environment.

    *iv.*    *Intentional Infliction of Emotional Distress Claim*

Plaintiff makes allegations against Rugon for intentional infliction of emotional distress. To establish a claim for this, a plaintiff must establish: "(1) that the conduct of the defendant was extreme and outrageous; (2) that the emotional distress suffered by the plaintiff was severe; and (3) that the defendant desired to inflict severe emotional distress or knew that severe emotional distress would be certain or substantially certain to result from his conduct." *White v. Monsanto Co.*, 585 So.2d 1205 (La. 1991). To constitute extreme and outrageous, the conduct must be

"atrocious and utterly intolerable in a civilized community." *Id.* at 1209. "Liability does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities." *Id.* The Court has already explained why Rugon's comments were not serious. The Court similarly finds that the comments were far from being "utterly intolerable." They were insults, at best. Therefore, the Court grants summary judgment for Defendants with respect to this claim.

  v.  *Defamation and Slander Claim*

As Defendants note, a plaintiff asserting defamation or slander bears the burden of proving that the defendant made a false statement. *See Costello v. Hardy*, 864 So.2d 129, 139 (La. 2004). Here, Plaintiff has no evidence to prove that a Goodwill employee made a false statement about him. The following is an excerpt from Plaintiff's deposition:

> Q: Are you claiming defamation and slander?
>
> A: Well, you know, I'll tell you what. It has been rather hard to find employment. It is a very close-knit community, so –
>
> Q: Are you guessing that you are being blackballed?
>
> A: I think so, yes.
>
> Q: Do you have any proof of that?
>
> A: No, I do not.
>
> Q: Have you run into anybody in the community who says they heard about the circumstances of your termination?
>
> A: Not at this time.

(Rec. Doc. 27-2 at 46-47). Based on this testimony, Plaintiff's defamation and slander claims should be dismissed.

  Accordingly;

**IT IS ORDERED** that the **Motion for Summary Judgment (Rec. Doc. 27)** filed by Defendants is **GRANTED**;

**IT IS FURTHER ORDERED** that the **Motion to Strike Affidavits (Rec. Doc. 39)** filed by Defendants is **DENIED AS MOOT**;

**IT IS FURTHER ORDERED** that Plaintiff's **Motion for Extension of Deadlines (Rec. Doc. 44)** is **DENIED**. The Court has already allowed Plaintiff extensions in this case and finds that it would be inappropriate to allow any more.

New Orleans, Louisiana, this 3rd day of August, 2016

                                          JUDGE JAY C. ZAINEY
                                          UNITED STATES DISTRICT JUDGE